UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **KENNETH SINGLETARY,** *et al.* | **CIVIL ACTION** |
| **VERSUS** | **No. 05-4000** |
| **UNITED STATES OF AMERICA** | **SECTION: I/4** |

### ORDER AND REASONS

Before the Court is a motion filed on behalf of defendant, the United States, to limit the *ad damnum*[1] in this case. Also before the Court is a motion filed by plaintiff Bessie Singletary, appearing individually and on behalf of her minor daughter, Courtney Singletary, to enforce rules of court and for sanctions. For the following reasons, plaintiff's motion to enforce rules of court and for sanctions is **DENIED**, and defendant's motion to limit the *ad damnum* is **GRANTED**..

### *BACKGROUND*

On August 11, 2004, plaintiff Bessie Singletary and her daughter Courtney were injured in a car accident when their vehicle was struck by another vehicle owned and operated by an employee of the United States Postal System ("USPS"). At the scene, Bessie Singletary complained of pain to her left posterior hip, while Courtney Singletary reported pain in her right

---

[1] An *ad damnum* clause is "[a] clause in a prayer for relief stating the amount of damages claimed." Black's Law Dictionary 40 (8th ed. 2004).

knee.² Plaintiff and her daughter were transported to Slidell Memorial Hospital, treated, and discharged.

On August 17, 2006, plaintiff received a letter from the USPS instructing her to complete an enclosed SF 95 form to process her claim for damages. The letter instructed that she must include a total dollar figure on the form and explained that "any claim indicating undetermined or any language or other than a Final Figure will be considered invalid . . . [and] will not be processed."³ Plaintiff filed this form with the USPS on September 8, 2004, claiming $6,960.82 in property damage and $50,000 in personal injury damages.⁴ On this form, Bessie Singletary indicated that she suffered "Lumbar spine injury L4-5 disc narrowing."⁵ Her claim was denied on July 7, 2005.⁶

Plaintiff filed this lawsuit on August 19, 2005, seeking damages for the injuries she and her daughter suffered as a result of the accident. The United States filed a motion to limit the damages claim in plaintiff's complaint, arguing that plaintiff should be limited to the amount initially sought in her administrative claim with the USPS.

*Bessie Singletary's Injuries*

At the time of the August 11, 2004, accident, plaintiff had significant pre-existing injuries to her back. As the result of two car accidents in 1991, plaintiff was diagnosed with a disc

---

²Rec. Doc. No. 19-1, Exs. E, DD.

³Rec. Doc. No. 22, Ex. B, p. 1 (all errors in original).

⁴Rec. Doc. No. 19-1, Ex. A.

⁵Rec. Doc. No. 19-1, Ex. A.

⁶Rec. Doc. No. 19-1, Ex. O.

rupture at L4-5, L5-S1, and on July 7, 1993, she underwent a partial laminotomy.[7] Between June 12, 2003, and April 15, 2004, plaintiff saw Dr. Provenza for pain in her lower back; Dr. Provenza described her condition on April 15, 2004, as "severe degenerative change and disk space narrowing at L4-5" with "[m]ore mild degenerative changes at L5-S1."[8] Beginning in 1999, plaintiff was also diagnosed with and treated for fibromyalgia.[9]

At the emergency room after the August 11, 2004, accident, plaintiff was given Vicodin and Motrin for her pain and instructions regarding strains.[10] An X-ray indicated that she had "moderate degenerative disease of the L4-5 disc."[11] In a September 24, 2004, visit, Dr. Purohit described plaintiff as "unable to walk because of severe pain" and as having "very painful movement of the cervical region" and "persistent pain in the back."[12] At a later visit with the same doctor, plaintiff was described as still complaining of "severe pain in the back and lumbar region which radiates to both legs" and as still unable to move because of the pain. Dr. Purohit also noted at this visit that plaintiff had severe muscle spasms and that she had been treated medically without any relief.[13] Her visits to Dr. Purohit on September 28, October 19, and November 30, 2004, showed little change.[14] On November 9, 2004, plaintiff also complained of

---

[7] Rec. Doc. No. 19-1, Ex. T.

[8] Rec. Doc. No. 19-1, Exs. N-3 to -10.

[9] Rec. Doc. No. 19-1, Exs. BB-1 to -7.

[10] Rec. Doc. No. 19-1, Ex. F, p. 2.

[11] Rec. Doc. No. 19-1, Ex. G.

[12] Rec. Doc. No. 22, Ex. G.

[13] Rec. Doc. No. 19-1, Ex. H-2.

[14] Rec. Doc. No. 19-1, Exs. H-3, H-4, H-6.

intermittent severe migraine headaches.[15]  At her visit on December 21, 2004, Dr. Purohit noted that "[p]atient will require further EMg and [n]eurosurgeon consultation."[16]  On January 27 and May 10, 2005, plaintiff complained of tingling and numbness in her legs and right hand.[17]  Throughout all of these visits to Dr. Purohit, plaintiff was treated with medication and advised to use a heating pad on her back.

In May, 2005, plaintiff began seeing Dr. Provenza, a neurosurgeon.  On June 10, 2005, Dr. Provenza ordered a myelography of the cervical and lumbrosacral regions of plaintiff 's back.[18]  Myelographies were performed on August 25, 2005, and April 6, 2006, by Dr. Provenza.[19]  On May 22, 2006, Dr. Provenza performed an L4-5 anterior lumbar fusion on plaintiff.[20]

*Courtney Singletary's Injuries*

When Courtney Singletary was admitted to the emergency room, she complained of pain in her right knee.[21]  Courtney Singletary was treated with Tylenol #3 and Ibuprofen; she saw Dr. Purohit eight times between August 24, 2004, and May 10, 2005.[22]  An MRI of her knee on May

---

[15]Rec. Doc. No. 19-1, Ex. H-5.

[16]Rec. Doc. No. 19-1, Ex. H-6.

[17]Rec. Doc. No. 19-1, Exs. H-8, H-12.

[18]Rec. Doc. No. 19-1, Ex. N-2.

[19]Rec. Doc. No. 19-1, Exs. Q, R.

[20]Rec. Doc. No. 19-1, Ex. S-1.

[21]Rec. Doc. No. 19-1, Ex. DD.

[22]Rec. Doc. No. 19-1, Exs. FF-1 to -8.

9, 2005, was negative for any injury.[23]  Plaintiff does not make any argument in her brief that her claims relating to Courtney Singletary's injuries justify a damage award above what plaintiff sought in her administrative claim.

*The Parties' Motions*

On September 5, 2006, the United States filed its motion seeking to limit plaintiff's damages claim to the amount claimed in the administrative proceeding.[24]  On September 19, 2006, after the Court granted leave to the United States to file a reply motion, plaintiff filed her motion to enforce rules of court and for sanctions.[25]

## *LAW AND ANALYSIS*

### I. Plaintiff's Motion to Enforce Rules of Court and for Sanctions

The Court will first dispense with plaintiff's motion to enforce rules of court and for sanctions.  Plaintiff argues that defendant's motion for leave to file a reply brief in support of its motion to limit *ad damnum* was not timely filed and that defendant did not properly serve her with a copy of this motion as required by the local rules.  Plaintiff also contends that the reply brief does not provide the Court with any new information and that sanctions against defendant are appropriate.

Defendant filed its *ex parte* motion for leave to file a reply brief on September 18, 2006,[26]

---

[23]Rec. Doc. No. 19-1, Ex. GG.

[24]Plaintiff later attempted to file a motion to increase the *ad damnum*; the Court denied this attempt.  *See* Rec. Doc. Nos. 26, 27.

[25]Rec. Doc. No. 31.

[26]Rec. Doc. No. 28.

and the Court granted this motion the next day.[27]  The hearing date for defendant's motion to limit *ad damnum* was September 20, 2006.  Plaintiff appears to argue that, because she received notice of the motion for leave on September 19, 2006, she did not have adequate time to oppose the filing of the motion for leave.

Though reply briefs are not specifically authorized by the Federal Rules, they are likewise not prohibited.  *See Wright v. Murray Guard, Inc.*, No. 05-5301, 2006 U.S. App. LEXIS 18672, at * 32-33 (6th Cir. Jan. 26, 2006).  "The decision to grant a motion for leave to file a reply brief relies on the interpretation and application of local rules and local practice."  *Id.*  Local Rule 7.5 provides that "[n]o supplemental opposition memoranda may be filed except with leave of court first obtained."  In support of their querulous argument, plaintiff cites to Local Rule 7.5 and its language instructing that "[a] copy of the memorandum will be delivered to opposing counsel in the same fashion in which delivery to the judge is made."[28]  As the United States notes, and as the plain meaning of the rule suggests, this required delivery applies only to the opposition memorandum, not to any supplemental memorandum.

---

[27]Rec. Doc. No. 29.

[28]Local Rule 7.5 states, in full:

Each party opposing a motion shall file, in duplicate, a memorandum of the reasons advanced in opposition to the motion and a list of citations of the authorities upon which the opponent relies or copies of these authorities no later than the eighth calendar day prior to the noticed hearing date and shall at the same time serve a copy thereof on the opposing parties. The opposition memorandum, in duplicate, must be in the hands of the judge who will hear the motion no later than the day such memorandum is due to be filed.

A copy of the memorandum will be delivered to opposing counsel in the same fashion in which delivery to the judge is made.

If the motion requires the consideration of facts not appearing of record, counsel shall also serve, and shall submit with each copy of his/her opposition, copies of all documentary evidence that he/she intends to submit in opposition to the motion.

No supplemental opposition memoranda may be filed except with leave of court first obtained.

Plaintiff cites to no additional authority to suggest that defendant's service of its motion for leave was improper or that this motion could not be filed *ex parte*. It has long been the practice of this Court, however, to permit parties to file such motions *ex parte*. Considering defendant's service on plaintiffs, by mail[29] and fax, of its motion for leave, the Court finds that defendant's actions were proper. The Court will consider defendant's reply brief in ruling on its motion to limit *ad damnum*; no sanctions are appropriate.

## II.  Motion to Limit *Ad Damnum*

The Federal Tort Claims Act ("FTCA") constitutes a limited waiver of sovereign immunity; courts must strictly construe this waiver and resolve all ambiguities in favor of the sovereign. *See Leleux v. United States*, 178 F.3d 750, 754 (5th Cir. 1999) (citiations omitted); *Linkous v. United States*, 142 F.3d 271, 275 (5th Cir. 1998) (citing *United States v. Nordic Village, Inc.*, 503 U.S. 30, 33, 112 S. Ct. 1011, 1014, 117 L. Ed. 2d 181 (1992)). The federal district courts have exclusive jurisdiction over claims against the United States for injury or loss of property, or personal injury or death caused by the negligent or wrongful act of a government employee "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." *Id.* § 1346(b).[30] The purpose of the FTCA is to compensate victims of governmental negligence "in circumstances like those in which a private person would be compensated for private person negligence." *Sant v. United States*, 896 F. Supp. 639, 640-41 (W.D. La. 1995). Because the

---

[29] *See* Rec. Doc. No. 32-2.

[30] Pursuant to the FTCA, "the United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages." 28 U.S.C. § 2674.

alleged conduct occurred in Louisiana, Louisiana law applies to plaintiff's FTCA claims. *Bustamente v. United States Dep't of Veterans Affairs*, 107 F. App'x. 426, 427 (5th Cir. 2004); *Tindall v. United States*, 901 F.2d 53, 55 (5th Cir. 1990).

A party seeking to recover pursuant to the FTCA is typically limited by the amount of damages sought in the administrative proceeding. 28 U.S.C. § 2675(b) provides:

> Action under this section shall not be instituted for any sum in excess of the amount of the claim presented to the federal agency, except where the increased amount is based upon newly discovered evidence not reasonably discoverable at the time of presenting the claim to the federal agency, or upon allegation and proof of intervening facts, relating to the amount of the claim.

To determine whether the amount of the administrative claim will limit the plaintiff's ultimate recovery, courts in the Fifth Circuit apply a two-part test: "[T]here is first a subjective test as to whether the specific injuries were known at the time the administrative complaint was made. Then there is an objective test as to whether the plaintiff could have made out its worst-case scenario based on the basic severity of the injuries that were known." *Dickerson v. United States*, 280 F.3d 470, 476 (5th Cir. 2002) (citation omitted).

Quoting *Low v. United States*, 795 F.2d 466, 470 (5th Cir. 1986), the Fifth Circuit has further explained that a court must first determine whether "the post-claim evidence as to the extent of the injuries, the prospects of recovery, the extent of recovery, and of the life expectancy could not have been discovered at the time the plaintiff filed its administrative claim" and next ask whether "these facts represent newly discovered evidence or intervening facts for the purposes of § 2675(b)." *Dickerson*, 280 F.3d at 475-76 (internal citations and quotations omitted). In addition, the *Dickerson* court explained that "[t]he second prong of the analysis has several requirements. First, the evidence must support the increase in the prayer over the

8

administrative claim.  Next, the allegedly newly discovered evidence or intervening facts must not have been reasonably capable of detection at the time the administrative claim was filed." *Id.*  The plaintiff bears the burden of proving intervening facts or newly discovered evidence. *Scallan v. United States*, No. 00-3349, 2004 U.S. Dist. LEXIS 613, at *15 (E.D. La. Jan. 20, 2004) (Duval, J.); *see also Lebron v. United States*, 279 F.3d 321, 330 (5th Cir. 2002).  New information "can be newly discovered evidence or an intervening fact . . . if it sheds new light on the basic severity of the claimant's condition--that is, if it materially differs from the worst-case prognosis of which the claimant knew or could reasonably have known when the claim was filed." *Lebron*, 279 F.3d at 330 (paraphrasing *Low v. United States*, 795 F.2d 466, 470 (5th Cir. 1986)).  The *Lebron* court warned, however, that "new information cannot surmount the bar created by § 2675(b) if the information merely concerns the precision with which the nature, extent, or duration of a claimant's condition can be known." *Id.*

Clearly, plaintiff knew of her specific injuries at the time of her administrative claim; the SF 95 form reflects that she sought damages for Courtney Singletary's right knee injury and her own "Lumbar spine injury L4-5 disc narrowing."[31]  The severity of plaintiff's injuries, the extent to which plaintiff knew or could have predicted how her recovery would progress, and the medical intervention that would be required are in dispute.

The United States argues that, considering plaintiff's prior back injury, plaintiff should have been able to estimate that a "worst-case" scenario might include surgery, which she then should have factored into her administrative claim.  As plaintiff notes, courts have refused to limit *ad damnum* where a party could not know that her injuries would require surgery.  The

---

[31]Rec. Doc. No. 19-1, Ex. A.

9

cases that plaintiff cites, however, are inapposite. In *Bishop v. United States*, No. 96-1345, 1997 U.S. Dist. LEXIS 5837 (E.D. La. Apr. 22, 1997), and *Howard v. Bergeron*, No. 93-1351, 1995 U.S. Dist. LEXIS 1913 (E.D. La. Feb. 9, 1995), Judge Duval refused to limit the plaintiffs' *ad damnum*; in both of these cases, though, the court did not have to weigh evidence of prior injury such as that present in this case. Plaintiff's citation to *United States v. Alexander*, 238 F.2d 314, 318 (5th Cir. 1956), is unhelpful for the same reason. Moreover, plaintiff's injuries in this case do not appear to present the same subtlety and complexity as those that led the court in *Fraysier* to refuse to limit the plaintiff's claims. *See Fraysier*, 766 F.2d at 481.

Plaintiff's records do not reflect that she discussed the possibility of surgery with Dr. Purohit prior to her administrative claims. Judging all of the facts from an objective perspective, however, the Court does not find this fact dispositive. Plaintiff was aware of her previous back injuries at the time of her administrative claims. These prior injuries, coupled with the severe, persistent pain that she reported immediately after the accident, would suggest to a reasonable person that surgery might be required. The conservative treatment initially prescribed by Dr. Purohit could not foreclose the later possibility of more invasive measures. Considering all the evidence presented, the Court finds it reasonable to expect that plaintiff could have predicted that her injuries, in a worst-case scenario, might have required surgery.

Defendant's citation to *Norrell v. United States*, No. 00-303, 2002 U.S. Dist. LEXIS 26337 (E.D. Tenn. Aug. 1, 2002), is persuasive. There, the court denied the plaintiff's attempt to increase the damages amount, finding that the plaintiff "knew he had a significant injury to his cervical spine and he either knew or reasonably could have foreseen and expected that he might have surgery." 2002 U.S. Dist. LEXIS 26337, at *14. The court wrote that "[t]he possibility

that the conservative course of medical treatment might be unsuccessful and that [the plaintiff] might have to undergo spinal fusion surgery as a result of the compression fracture was not unexpected or unforeseen. *Id.* at 19. Similarly, plaintiff could have predicted that her previous significant back problems coupled with her injuries from the instant accident could result in surgery.[32]

Considering all the facts presented, the Court finds that plaintiff has failed to show that the extent of her injuries could not have been discovered at the time she filed her administrative claim and that these facts present newly discovered evidence or intervening facts for the purposes of § 2675(b). In light of her preexisting back condition, plaintiff could reasonably have been aware of the extent of her injuries and the possibility that she might require surgery as a result. Plaintiff should, therefore, be limited to those damages that she sought in her administrative claim.

Accordingly,

**IT IS ORDERED** that plaintiff's motion to enforce rules of court and for sanctions[33] is **DENIED**.

---

[32] The Court does not find, as defendant suggests, that plaintiff had any affirmative duty to amend her administrative claims, despite having the opportunity to do so. "[A] claimant's failure properly to take advantage of 28 C.F.R. section 14.2(b)'s amendment procedure does not preclude utilization of the *ad damnum* limitation exceptions contained in 28 U.S.C. section 2675(b)." *McCormick*, 539 F. Supp. at 1184 n. 2 (citing *Husovsky v. United States*, 590 F.2d 944, 954 n.24 (D.C. Cir. 1978)); *see also Kenney v. United States*, 298 F. Supp. 2d 139, 144 (D. Me. 2003). The Court is not persuaded by defendant's citation to *Dickerson* regarding this issue. In *Dickerson*, the Fifth Circuit responded to the plaintiffs' argument that delays in accessing medical records limited their knowledge of one plaintiff's injuries by noting that "[e]ven if the Dickersons did not request the medical records until filing the claims, they still could have amended their administrative claims after filing at any time before bringing suit." 280 F.3d at 477 n.6. These records, though, were irrelevant to the court's holding: "The receipt of such records is irrelevant, however, in light of the above facts supporting a finding that the Dickersons could have objectively made out their 'worst-case scenario' in their initial administrative claims." *Id.* The Court does not find that this *dicta* creates any duty to amend; however, as detailed above, the lack of any duty to amend will not preclude the court from limiting plaintiff's *ad damnum*.

[33] Rec. Doc. No. 31.

**IT IS FURTHER ORDERED** that defendant's motion to limit the *ad damnum*[34] is **GRANTED**.

New Orleans, Louisiana, November ___6th___, 2006.

```
                                    _____
                                         LANCE M. AFRICK
                                    UNITED STATES DISTRICT JUDGE
```

---

[34]Rec. Doc. No. 19.